# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL JACKSON,** | : | **CIVIL NO. 1:08-CV-0035** |
| **Petitioner** | : | |
| v. | : | **(Judge Conner)** |
| **T.R. SNEIZEK**, | : | |
| **Respondent.** | : | |

## **MEMORANDUM**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by *pro se* petitioner, Michael Jackson ("Jackson"), an inmate confined at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill") in Minersville, Pennsylvania.  Jackson alleges that his constitutional rights were violated in the context of a disciplinary proceeding.  For the reasons that follow, the petition will be denied.

**I.**   **Statement of Facts**

On April 12, 2005, at approximately 7:25 p.m., Senior Officer J. O'Boyle approached Jackson in his cell in the Special Housing Unit ("SHU") and ordered him to provide a urine sample.  (Doc. 6-4 at 3.)  Jackson refused to provide the sample at that time.  (Id.)  Officer O'Boyle then provided Jackson with over eight ounces of water to assist him in providing the sample and returned two hours later

to collect the sample.[1]  (Id.)  At no time did Jackson inform Officer O'Boyle or any other staff member that he suffered from any psychological or medical condition that would prevent him from providing the urine sample.  (Id.)  Upon Officer O'Boyle's return, Jackson again refused to provide the sample.  (Id.)

On April 13, 2005, an incident report was delivered to Jackson charging him with "refusing to provide a urine sample or take part in other drug abuse testing" in violation of Section 110 of the BOP's disciplinary code.  (Id.)  An investigation was conducted on the same day.  (Id.)  On April 18, 2005, the Unit Disciplinary Committee ("UDC") held a hearing to review the incident report.  (Id.)  At that time, Jackson stated that he had a problem urinating in front of other people due to an incident which had occurred while he was in state custody in 1974.  (Id. at 30.)  After reviewing the matter, the UDC referred it to the disciplinary hearing officer ("DHO") for a further hearing.  (Id.)

A hearing was held on May 2, 2005, at which time, Jackson indicated that he understood his rights.  (Id. at 35-39.)  He requested staff representation but chose not to present witness testimony.  (Id. at 35-36.)  No procedural irregularities occurred, and Jackson presented no documentary evidence.  However, his staff representative, chief psychologist Dr. G. Londis, provided the following statement,

---

[1] Pursuant to section 9 of the Bureau of Prisons' ("BOP") Program Statement 6060.08, "Urine Surveillance and Narcotic Identification," an inmate is ordinarily expected to provide a urine sample within two hours of the request.  (Doc. 6-4 at 33.)  A staff member is permitted to provide the inmate with eight ounces of water at the beginning of the two hour period in order to assist the inmate in providing the sample.  (Id.)

as noted by the DHO: "[Dr. Londis] met with inmate Jackson in advance of the hearing to discuss the case. Additionally, Dr. Londis indicated there is no documentation in Jackson's medical (psychology) record to indicate he was treated or diagnosed with having a 'shy bladder' which would prohibit him from urinating in front of another person." (Id. at 35.) Jackson also provided the following statement, as noted by the DHO:

> Back when I was in the state (reformatory), I had an incident when I was taking a piss and someone had clocked me from behind . . . . Since then, I've had trouble urinating in front of people . . . . The DHO asked Jackson if he cells with any other inmate which may indicate he has a problem urinating in front of people. Jackson stated, "I cell with someone and do not have a problem urinating in front of them." Jackson stated, "I really do have a problem."

(Id.)

The DHO issued a decision after the hearing, in which he found credible "the information provided by the staff members involved in this case, as they derived no known benefit by providing false information. Jackson's past history of refusing to provide a urine sample indicates he has a propensity to repeat this type of misconduct. There was no medical documentation which illustrates Jackson of receiving treatment for a shy bladder syndrome or any other medical condition which would preclude him from urinating in front of other people." (Id. at 36.) The DHO concluded that the "greater weight of the evidence/some facts" indicated that Jackson refused to provide a urine sample in violation of Code 110. (Id.) Jackson was sanctioned with disciplinary segregation, disallowance of fifty-four (54) days of good conduct time, forfeiture of three hundred and fifty-two (352) days of non-

3

vested good conduct time, and loss of phone and visiting privileges for a period of one year. (Id. at 37.)

Jackson's initial timely appeal of that decision was denied by the BOP's Northeast Regional Office on June 30, 2005. (Id. at 25.) The Regional Office also advised Jackson to contact either psychology services or health services staff for an evaluation if he was suffering from a serious medical condition. (Id. at 44.)

On July 12, 2005, Jackson filed two grievances at the institutional level. In his first grievance, Jackson alleged that a psychologist had provided incorrect information at his DHO hearing. (Id. at 26.) This grievance was rejected on August 8, 2005. (Id.) Jackson did not file an appeal. In his second grievance, Jackson again appealed the DHO's May 2, 2005, decision. (Id.) This appeal was rejected on August 8, 2005, because Jackson had submitted it to the wrong level. (Id.) He was advised that he could resubmit the grievance within ten (10) days of the rejection notice to the proper office.

Consequently, on August 23, 2005, Jackson filed a request for administrative remedy with the Northeast Regional Office appealing the DHO's May 2, 2005, decision. (Id. at 27.) In his appeal, Jackson stated that since he initially appealed the DHO's decision, he had been evaluated by Dr. Walters, a clinical psychologist, who determined that there was evidence in his records to support his allegations of a shy bladder. (Id. at 47-48.) Jackson attached a memorandum from Dr. Walters setting forth his findings. (Id. at 57.) Based on the new evidence which had not previously been considered by the DHO, the Northeast Regional Office granted in

part Jackson's appeal and remanded the matter to the DHO for a rehearing.  (Id. at 50.)

The rehearing was held on September 26, 2005.  (Id. at 52-55.)  Jackson again chose not to present witness testimony, but did have staff representation.  Further, he provided the following additional statement:  "At the end of the two hours, I asked the officer to give me more time and he gave me six more minutes. . . . I have a problem pissing in front of another person and they take the sample up here in SHU. . . . I pulled the curtain to give me privacy and the officer was present, but I just couldn't go."  (Id. at 53.)  The DHO also considered Dr. Walter's memorandum, which stated in part,

> I have reviewed his central file and found some support for his assertions [of a shy bladder].  Based on my interview and file review, I believe that Jackson does have genuine concerns about urinating in front of others that can be traced back to a specific traumatic incident.  I am therefore recommending that some degree of flexibility be exercised when attempting to get a urine [sample] from this inmate although by no means does this memo exempt him from participating in the urine surveillance program.

(Id.)

After consideration of the evidence presented at both the initial hearing and the rehearing, the DHO concluded that Jackson committed a Code 110 violation.  (Id. at 54.)  In so finding, he again relied on Officer O'Boyle's statement in the incident report that Jackson was provided at least two hours to provide a urine sample and was given over eight ounces of water to aid him.  He also considered Officer's O'Boyle's supplemental statement: "Jackson was housed in SHU when

5

this violation occurred. I was observing him through his cell window. Since the incident occurred, I have collected one urine sample from Jackson with no problems noted." (Id. at 54.) The DHO also considered Jackson's past history of refusing to provide a urine sample and his failure to advise Officer O'Boyle of the reasons for his inability to provide a urine sample at the time of the request. (Id.) Finally, the DHO considered Dr. Walters' memorandum indicating Jackson's medical condition and the need to be more flexible in collecting a urine sample from him, noting that Officer O'Boyle had "demonstrated his flexibility by offering additional fluids during the procedures." (Id.) As a result, the sanctions previously imposed were upheld.

On October 14, 2005, Jackson filed a request for administrative remedy with the Northeast Regional Office appealing the DHO's decision resulting from the September 26, 2005, rehearing. (Id. at 27.) The Northeast Regional Office denied Jackson's appeal on November 10, 2005. (Id. at 62.) In that response, the regional director also noted that the sanctions imposed were not disproportionate to Jackson's misconduct. (Id.)

On December 5, 2005, Jackson filed a request for administrative remedy with the BOP's Office of General Counsel appealing the regional director's decision. (Id. at 28.) Jackson's request was rejected the next day due to his failure to submit copies of the grievance and the response thereto filed with the Northeast Regional Office. Jackson was advised that he could resubmit his appeal within fifteen (15) days of the date of the rejection notice, but he failed to refile.

Following these administrative appeals, Jackson filed the present petition alleging that the disciplinary decision was not supported by the evidence, that no investigation was conducted and no record made, and that the sanctions imposed were too harsh.

**II.     Discussion**

The BOP disciplinary process is outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23.  These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules.  The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14.  Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator.  Id. § 541.14(b).

Following the investigation, the matter is referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  If the alleged violation warrants consideration for more serious sanctions or involves a prohibited act listed in the among the most severe category of offenses, known as "greatest category offenses," the UDC refers the matter to a DHO for a hearing.  Id. § 541.15.  Because Jackson was charged with a greatest category offense, the matter was referred for a disciplinary hearing.

Greatest category offenses carry a possible sanction of loss of good conduct time credits, *inter alia*.  Id. § 541.13.  When a prison disciplinary hearing may result

7

in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974).

Further, despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing § 2241 habeas claims. Speight v. Minor, 245 F. App'x 213, 215 (3d Cir. 2007); Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996).  Exhaustion promotes a number of goals: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  Moscato, 98 F.3d at 761-62 (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). Courts, however, have excused exhaustion when it would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (Roth, J., concurring) (exhaustion excused upon petitioner demonstrating futility); Lyons v. United States Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion excused when agency actions clearly and unambiguously violate statutory or constitutional rights).

In order for a federal prisoner to exhaust his administrative remedies, he must comply with prison grievance process set forth in the Code of Federal Regulations. See 28 C.F.R. § 542.10-.23; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. Id. at § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. Id. at §§ 542.15(a), 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. See Sharpe v. Costello, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

In the response to the instant habeas petition, respondent claims that the petition should be dismissed because Jackson failed to complete the BOP's administrative appeals process prior to filing in this court. Jackson, however, contends that he did in fact provide all three levels of the BOP administrative remedy process the opportunity to address his issues, but they refused. Because the court concludes that the instant petition is without merit, it need not determine whether to excuse Jackson's failure to exhaust.

A.     **Sufficiency of the Evidence**

Jackson contests the sufficiency of the evidence relied upon in finding him guilty of the Code 110 violation. (Doc. 1 at 4-6.) The DHO's decision is required to be supported by some evidence in the record. See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. See Hill, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is evidence in the record that supports the DHO's conclusion. See id.

Jackson contends that the DHO failed to consider his statements that he could not urinate while in the presence of others. He also contests Dr. Londis' finding that there is no documentation in Jackson's medical records to indicate that he was treated or diagnosed with a shy bladder that would prevent him from urinating in front of other people. However, at Jackson's rehearing the DHO clearly considered Dr. Walters' conflicting later report, as well as supplemental statements by Officer O'Boyle and Jackson himself. While Jackson states that staff accommodated his shy bladder in urine tests in the twenty (20) months preceding his refusal to provide urine, (Doc. 1 at 4), there is no indication that he brought to the DHO's attention the staff's knowledge in these prior tests.

10

The court finds that there was "some evidence" to support the DHO's decision. The statement of Officer O'Boyle, evidence of Jackson's past history of refusing to provide a urine sample, and Jackson's failure to advise Officer O'Boyle of the reasons for his inability to provide a urine sample at the time of the request confirm that the DHO acted with a sound evidentiary basis. Hill, 472 U.S. at 455-56. Thus, the petition will be denied with respect to Jackson's claim that there was insufficient evidence to support the DHO's decision.

### B. Investigation and Record

Jackson also contends that BOP officials and the DHO failed to conduct an investigation in violation of BOP policy, which, as a result, led to false statements made during the disciplinary hearing. As noted above, following the issuance of the incident report, a prompt investigation must be undertaken. 28 C.F.R. § 541.14(b). However, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded. Von Kahl v. Brennan, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief).

The record reflects that a BOP official conducted an investigation on April 13, 2005, the day following the incident. (Doc. 6-4 at 30-31.) In his incident report, the investigator indicated that he reviewed Officer O'Boyle's statement, interviewed

11

Jackson, and reviewed his disciplinary record.  (Id. at 31.)  Further, the investigator delivered his incident report to Jackson that same day, putting Jackson on notice of the charges filed against him.

With respect to the DHO, the court notes that pursuant to BOP regulations, "[i]n order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO."  28 C.F.R. § 541.16(b).  Thus, contrary to Jackson's claim, the DHO did not fail to conduct an investigation.  Indeed, the DHO was not permitted to participate in the investigation.

Since the record shows that an investigation was conducted by the proper BOP official in a prompt manner, and Jackson was timely delivered the incident report, Jackson has failed to establish that he was prejudiced by a violation of BOP regulations such as failure to conduct an investigation.  Thus, the petition will be denied with respect to Jackson's claim that BOP officials failed to conduct a full and prompt investigation.

Jackson also claims that the DHO failed to make a proper record of the disciplinary hearing in violation of his right to due process.  Pursuant to the BOP's regulations,

> The Discipline Hearing Officer shall prepare a record of the proceedings which need not be verbatim.  This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied on by the DHO, and must include a brief statement of the reasons for the sanctions imposed.  The evidence relied upon, the decision, and the reasons for the actions taken must be set out in specific terms unless doing so would jeopardize institutional security.

> The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision.

28 C.F.R. § 541.17(g). In the instant case, the DHO report served as the record of the disciplinary proceeding. The DHO is not required to make an audio recording of the proceeding. (See id.) Thus, Jackson's due process rights were not violated. The petition will be denied with respect to Jackson's claim that the DHO failed to make a recorded record of the disciplinary proceeding.

### C.     **Sanctions**

Jackson also challenges the severity of the sanctions imposed by the DHO. The sanctions that may be imposed upon a finding of guilt of a greatest category offense include, *inter alia*, forfeiting earned statutory good conduct time or up to 100% of non-vested good conduct time, up to sixty days disciplinary segregation, and loss of privileges. 28 C.F.R. § 541.13. Jackson is not entitled to relief on this ground as the sanctions imposed upon him were within the limits prescribed in this regulation.

Further, these penalties (forfeiture of good conduct time, disciplinary segregation, and loss of privileges) plainly fall "within the expected perimeters of the sentence imposed by a court of law," and do not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 485 (1995). Therefore, because the sanctions imposed in this case fall well within the regulatory scheme for such disciplinary infractions, Jackson's argument is without merit.

**III.** **Conclusion**

For the above stated reasons, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge

Dated:  August 28, 2008

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL JACKSON**, | : | **CIVIL ACTION NO. 1:08-CV-0035** |
| Petitioner | : | |
| v. | : | **(Judge Conner)** |
| **T.R. SNEIZEK**, | : | |
| Respondent. | : | |

## **ORDER**

AND NOW, this 28th day of August, 2008, upon consideration of the petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus (Doc. 1) is DENIED.

2. The Clerk of Court is directed to CLOSE this case.

                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge